Isadore Bookstein, J.
These are motions to vacate and quash two subpoenas duces tecum issued by respondent, Attorney-General. Since both matters are virtually identical, they will be treated and disposed of simultaneously.
While the common-law doctrine of caveat emptor (let the buyer beware) still survives, its rigors have been considerably lessened by various statutes. By chapter 849 of the Laws of 1958, the Legislature, for the protection of unsuspecting members of the general public enacted section 396 of the General Business Law, which was designed to eliminate and prevent so-called “ bait ” advertising. That law placed upon the Attorney-General the duty of applying for an injunction to restrain the violation thereof.
Section 396 of the General Business Law does not confer upon the Attorney-General the power to issue subpoenas to obtain evidence of violations thereof, such as is conferred upon him by other sections of the General Business Law, as for instance, section 343 thereof.
However, the subpoenas were not issued pursuant to section 396 of the General Business Law. The subpoenas on their face show that they were issued pursuant to article 8 of the General Corporation Law.
Section 91 of the General Corporation Law provides that ‘ ‘ Upon leave being granted, as prescribed in the next section, the attorney-general may bring an action against a corporation * * * annulling the existence of the corporation, upon the ground that it has * * *
1‘ 2. Violated any provision of law whereby it has forfeited its charter ’ \
Section 92 of the General Corporation Law, as amended, effective April 9, 1956 provides as follows:
“ 1. Before granting leave, the court, in its discretion, may require such notice of the application as it deems proper, to be given to the corporation and may hear it in opposition thereto.
“ 2. In any event, in connection with such proposed application or action, the attorney-general is authorized to take proof *741 and make a determination of the relevant facts in the manner provided in section four hundred six of the civil practice act.”
Before the Attorney-General may commence an action to annul a corporate charter, he must apply to the court for permission to do so. In order to make such application, he must present sufficient evidence of a violation of law as would justify the court in granting such permission. He has received complaints from responsible sources to require action on his part, at least to determine if there is sufficient evidence to warrant an application to the court for permission to institute an action to annul the corporate charters of petitioners.
Subdivision 2 of section 92 expressly authorizes Mm to take proof and make a determination of the relevant facts in the manner provided in section 406 of the Civil Practice Act. That section expressly authorises the issuance of a subpoena to enable him to make such determination.
The subpoenas here involved expressly state that the purpose thereof is an inquiry to determine whether an application should be made for permission to institute an action to annul the charters of the petitioners. They expressly require the presence of the president or other officer of petitioners having knowledge to appear and testify. The records required to be produced deal with all sales records and contracts for the sale of aluminum storm windows and doors. The purpose is to ascertain if, in fact, petitioners have violated section 396 of the General Business Law, since a violation of law is the basis under section 91 of the General Corporation Law for an action to annul a corporate charter. (See Matter of Attorney-General, 81 Hun 541; 1931 Atty. Gen. 361.)
Between the subpoenas themselves and the answering affidavit, there does not appear to be any unreasonable requirement in the subpoenas in question. They are limited in scope to a legitimate subject of inquiry. (Of. Matter of Syracuse Co-op. Milk Distrs.’ Bargaining Agency v. Attorney-General, 13 Misc 2d 26.)
The case of Matter of Saratoga Harness Racing Assn. v. Monaghan (9 Misc 2d 868) is in no way comparable to these cases. There, no one was subpoenaed to appear and testify; there, records were subpoenaed, which obviously could have no relationship to the declared purpose of the inquiry; there, in effect, the respondent sought not a witness to testify, with books and papers, relevant to the inquiry, to be produced for the purposes of the examination of any witness but rather sought the delivery to him in New York City of almost any paper in petitioner’s possession, to be left with him for his discovery and inspection; there, the statute already gave him the absolute right *742 to inspect every scrap of paper of petitioner, without a subpoena. Motions to quash subpoenas denied.
Submit separate orders, fixing times and place for compliance with subpoenas.
All papers to Attorney-General, except briefs of petitioners which are transmitted to their respective attorneys.