Sol Wachtler, J.
The question in this proceeding is whether a court may relieve a party of the practical stigma of a criminal arrest record. Theoretically, the problem should not exist, for an arrest in and of itself, lawful or otherwise, is legally and logically probative of nothing regarding the character and background of the person arrested. As a practical matter, however, an arrest record may stigmatize and impede its victim throughout his lifetime.
On a summer day in 1968, by appointment, the 15-year-old petitioner and two companions arrived by boat at a friend’s home to spend the day water skiing. Petitioner and one friend swam to the shore and knocked at a rear door of the house. No one answered. Other doors were tried, without response. The boys looked through several windows, concluded that the house was empty, and turned to race each other back to the shore and then to their friend in the waiting boat. While in the water, a shot sounded. Petitioner turned, saw a police officer, and returned to the shore. Shortly thereafter, and notwithstanding attempts to explain his presence at the property, petitioner was arrested and charged with attempted burglary.
Due to petitioner’s age, the matter was transferred to the Family Court where, after due explanation and an executed agreement by his parents releasing local police authorities from any liability, the charge was withdrawn. On October 31, 1969, the Family Court ordered petitioner’s record “ sealed and withheld from public inspection ” subject to future inspection upon written order of the Administrative Judge of the court.
The files of the Nassau County and Sands Point Police Departments now contain records showing petitioner’s arrest on a charge of attempted burglary. Through his attorney, petitioner requested that these records be destroyed or obliterated. The requests having been refused, this proceeding was commenced.
The petition asks for physical expungement and obliteration of petitioner’s surname from all arrest records, the sealing and segregated filing of the records of this proceeding, and a declaration that petitioner’s arrest was null and void. It is alleged that maintenance of the records or divulging their contents violates petitioner’s rights to due process and the equal protection of the law, and that absent obliteration, petitioner may be discriminated against in connection with college applications, future employment and professional licensing.
The respondents candidly admit that ‘1 petitioner makes out a compelling case on a sympathy basis ”, but they point to *761 the absence of a statutory authorization for relief, and further suggest that relief will be illusory in any event because petitioner must always answer the question “ Were you ever arrested? ” in the affirmative and thereby open the Pandora’s box which his petition seeks to close forever.
While it is true that the petitioner may find the entire issue reopened by an honest response to the question posed above, it does not follow that the court should therefore refrain from giving relief to the extent possible. At the least, the subject of whether or not petitioner had been arrested should be opened with petitioner’s knowledge rather than through private investigation, so that petitioner may be afforded an opportunity to explain fully to those willing to listen. The protection afforded by the law is worthwhile if it does no more than assure petitioner that doors will not be closed, and opportunities precluded, on the basis of an arrest record, privately uncovered, but never mentioned.
No doubt, the subject matter of this proceeding is more susceptible to comprehensive legislative treatment than judicial disposition on a case by case basis. Other States carefully classify the disposition of all criminal arrests, so that existing records will accurately reflect and distinguish a wholly groundless arrest (see, e.g., Wheeler v. Goodman, 306 F. Supp. 58 [W. D. N. C., 1969]; Menard v. Mitchell, 430 F. 2d 486, 494 [C. A., 1970]), from an arrest not resulting in prosecution or conviction for other reasons. In some circumstances, the record may be ordered sealed, in others the arrest deemed a detention only, and in still other cases the person arrested (or convicted) is authorized to answer the query “ Were you ever arrested? ” in the negative. (See Cal. Penal Code, §§ 1203.45, 849, subd. [b], par. [1].) On the other hand, commentators and penologists have seriously questioned whether we best serve the individual, society or the ends of justice by expunging, sealing or otherwise suppressing facts as they actually exist. They contend that the concealment is illusory at best, that it often creates more problems than it solves, and that a valid solution lies only in education and the maintenance of better records (61 J. Crim. Law, Criminology and Police Science 378, No. 3). Indeed, one court has implied that this education might be profitably extended to public agencies, the police and the courts as well (Menard v. Mitchell, supra, pp. 490-491). Be that as it may, the immediate task is to give such relief as is available and warranted by the circumstances in the case at bar.
*762 Considering the facts of this case, as well as the youth and innocence of the petitioner, there could be no benefit to society -in maintaining’ the arrest record and the absence of explicit statutory authority poses no automatic bar to the relief sought, particularly since the petition asserts a claim grounded on more than mere sympathy (see Menard v. Mitchell, supra; Wheeler v. Goodman, supra; United States v. Kalish, 271 F. Supp. 968; Matter of Smith [Vasquez], 63 Misc 2d 198; see, contra, Matter of Weisberg v. Police Dept. of Vil. of Lynbrook, 46 Misc 2d 846, in which the constitutional issue was not raised or considered).
That injury may result from an arrest record has been toó thoroughly documented to necessitate detailed repetition. “ Opportunities for schooling, employment, or professional licenses may be restricted or nonexistent as a consequence of the mere fact of an arrest, even if followed by acquittal or complete exoneration of the charges involved ” (Menard v. Mitchell, supra, p. 490). All other things being equal, the person arrested, however innocent he may be, may find his opportunities narrowed in the competitive marketplace (Matter of Smith, supra; Wheeler v. Goodman, supra). And even if none of these events actually come to pass, as one court has observed, “ The preservation of these records constitutes an unwarranted attack upon his character and reputation and violates his right of privacy; it violates his dignity as a human being.” (United States v. Kalish, supra, p. 970).
Equally significant, on the other hand, is the fact that no benefit exists and no social purpose is served by the preservation of petitioner’s arrest record in this particular case. If the record is employed as a basis upon which to subsequently suspect, harass or otherwise penalize the petitioner, it should not be, for again it is legally and logically indicative of nothing.
‘ ‘ Arrest records exist to facilitate criminal investigation, but the plaintiffs ’ records here perform no such function. Plaintiffs have committed no crimes, and retention of their arrest records cannot be justified” (Wheeler v. Goodman, supra, p. 65).
Of course, not every arrest record which fails to terminate with a conviction may or should be automatically expunged, each case must be evaluated on an individual basis. Convictions frequently fail for reasons other than a defendant’s innocence. Evidence may be suppressed. Charges may be withdrawn. A victim may refuse to testify — or be unavailable. And yet there may well be a legitimate public interest in permitting retention of the arrest record in such instances. ‘1 There can be no deny *763 ing of the efficacy of fingerprint information, photographs, and other means of identification in the apprehension of criminals and fugitives. Law enforcement agencies must utilize all scientific data in society’s never-ending battle against lawlessness and crime ” (United States v. Kalish, supra, p. 970). If any of these purposes be served in a given case, expunction of the arrest record would seem inappropriate. No such purpose, however, has been offered or shown in the present case — nor could it be.
Petitioner also seeks a declaration by this court that the petitioner’s arrest was null and void. The conduct of the police officer has resulted in an unfortunate arrest record to the petitioner’s prejudice. The court will exercise its power to ameliorate the injury; however, this court does not seek to limit the police in the proper discharge of their responsibilities. The legality of an arrest depends on the existence of probable cause at the time of the arrest. Subsequent events, as in the present case, may show that the arrest was in fact wholly unnecessary, though probable cause may have existed when it was made.
The form and extent of relief remains for consideration. Petitioner has asked for and is entitled to an order directing the respondents to obliterate his and his parents’ surname from all records and other documents in their possession reflecting the fact of petitioner’s arrest. That should be done at a time convenient to the parties within 30 days after service of the judgment to be entered herein in the presence of petitioner’s parents or attorney. All records of this proceeding should be sealed and subject to inspection only at the petitioner’s request or upon order of the court (see Matter of Smith [Vasquez], supra, p. 205). The request for an order declaring petitioner’s arrest null and void is denied for the reason previously set forth.
Submit order on notice.